U NITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
               :

LEONARD CARLISLE,          :

               :

         **Plaintiff,**    :

               :     **OPINION AND ORDER**

     **- against -**    :

               :     **05 Civ. 6825 (SAS)**

CITY OF NEW YORK,      :
DETECTIVES ANDREW    :
COPERTINO, PATRICK     :
DOLAN, AND KIM ANDREWS, :
AND UNIDENTIFIED NEW YORK :
CITY POLICE OFFICERS,    :
EMPLOYEES AND AGENTS,   :

               :

        **Defendants.**  :
-------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

On July 29, 2005, Leonard Carlisle brought suit under section 1983 of

Title 42 of the United States Code against the City of New York and three named

law enforcement officers, as well as unidentified police officers, employees, and

agents. Plaintiff alleges that defendants maliciously prosecuted him and he seeks

five million dollars in damages. Defendants now move for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.    BACKGROUND[1]

In late December 2000, two dead bodies were found in Queens, both wrapped in plastic bags and tied up in a similar manner.[2]  The first body was discovered on December 24, 2000, and was later identified as Tracy Jackson.[3]  On December 29, 2000, a passerby found the second body, later determined to be Angela Worthy.[4]

Detective Andrew Copertino, one of the defendants, was among the law enforcement officers who responded to the discovery of the first body and was assigned to investigate the possible homicide.[5]  At the start of the investigation, before the second body had been discovered, detectives learned that a cell phone belonging to Tiscia Knight, one of plaintiff's co-workers, had been used to contact the first victim.[6]  Knight told detectives she had given her phone to plaintiff.[7]

---

[1]    The facts summarized in this section are undisputed unless otherwise noted.

[2]    *See* Defendants' Local Rule 56.1 Statement ("Def. 56.1") ¶¶ 3-4.

[3]    *See id.* ¶¶ 3, 9, 37, 40, 44, 66.

[4]    *See id.* ¶ 44.

[5]    *See id.* ¶¶ 5-6

[6]    *See id.* ¶¶ 14-15.

[7]    *See id.* ¶ 15.

Detectives interviewed plaintiff on December 28, 2000.[8]  During that interview,

plaintiff told the detectives he had been out with Knight, his girlfriend, on

December 22, 2000, but kept her cell phone after dropping her off that night.[9]

Plaintiff told detectives that he later went to his home with a woman who

performed sexual acts for the plaintiff, but that he did not know the woman's

name.[10]  She was later identified as Worthy.[11]  Plaintiff told detectives that Worthy

called another woman (later identified as Jackson) that same night, whom plaintiff

picked up and drove back to his apartment.[12]  At plaintiff's apartment, the two

women performed sex acts while plaintiff masturbated.[13]  Plaintiff stated that one

of the women then used his phone to order crack cocaine before he drove the

women to 196th Street and Henderson Avenue, where he dropped them off.[14]

---

[8]      *See id.* ¶ 18.

[9]      *See id.* ¶¶ 18-19.

[10]     *See id.* ¶ 20-21.

[11]     *See id.* ¶ 34.

[12]     *See id.* ¶¶ 26-27, 34.

[13]     *See id.* ¶ 29.

[14]     *See id.* ¶¶ 30-31.

On December 29, 2000, police found the second body, that of Angela Worthy.[15] The first officer on the scene did not observe any law enforcement officers touch the body.[16] Nor did any detectives or police officers accompany Worthy's body when it was taken from the scene.[17] Dr. Corinne Ambrosi, who performed an autopsy on Worthy, did not note any post-mortem injuries to the body.[18] The City Medical Examiner informed the Assistant District Attorney in the case that the similarity of the plastic bags and twine in which the two bodies were wrapped indicated that they came from a common source.[19] Detective Copertino also noted that the bodies of both victims were tied in a similar manner.[20]

On December 30, 2000, two days after interviewing plaintiff and the day after the discovery of the second body, three or four detectives executed a search warrant for plaintiff's apartment.[21] During this search, Detective Copertino

---

[15]   *See id.* ¶¶ 44, 66.

[16]   *See id.* ¶¶ 39, 42.

[17]   *See id.* ¶ 50.

[18]   *See id.* ¶ 66, 68-69.

[19]   *See id.* ¶ 53.

[20]   *See id.* ¶ 112.

[21]   *See id.* ¶¶ 55, 63.

found a black leather glove with blood on it, an earring, and a plastic bag that possibly had some blood on it, although plaintiff disputes this.[22]  Pursuant to a second search warrant, the Crime Scene Unit searched plaintiff's house the night of December 30, 2000 through December 31, 2000.[23]  During the second search, the Crime Scene Unit removed a partial, bloody palm print from the bathroom wall of plaintiff's apartment.[24]  The Crime Scene Unit also recovered a pair of size six Timberland brand boots from plaintiff's apartment, although plaintiff also disputes this discovery.[25]  Several days later, on January 5, 2001, the Crime Scene Unit executed a search warrant on the car owned by plaintiff's girlfriend, collecting hairs and fibers from the car.[26]

On April 17, 2001, Lisa M. Farber, a criminalist, issued a report that the leather glove reportedly found in plaintiff's apartment matched the glove recovered from Angela Worthy's body.[27]  Farber issued another report on May 22,

---

[22]     *See id.* ¶ 65.

[23]     *See id.* ¶¶ 74-75.

[24]     *See id.* ¶ 79.

[25]     *See id.* ¶¶ 77-78.

[26]     *See id.* ¶ 81, 82.

[27]     *See id.* ¶¶ 85-86.

2001, concluding that fibers found inside the Timberland boots reportedly found in plaintiff's apartment matched the socks recovered from Jackson's body.[28] Additionally, a police laboratory report, dated January 31, 2002, concluded that the bloodstain found in plaintiff's apartment could have contained Worthy's blood.[29]

On January 11, 2001, police learned through an interview with the Inspector General of the New York City Human Resources Administration, plaintiff's employer, that plaintiff had clocked into work on December 29, 2000, but never clocked out.[30]  Plaintiff had not been to work since that day.[31]

A grand jury indicted plaintiff on April 22, 2002, on felony charges of tampering with physical evidence and failure to bury or properly dispose of dead bodies.[32]  Plaintiff was acquitted of all charges on September 3, 2003.[33]

---

[28]     *See id.* ¶¶ 88-89.

[29]     *See id.* ¶¶ 106-107.

[30]     *See id.*  ¶¶ 92, 97.

[31]     *See id.* ¶ 91.

[32]     *See id.* ¶ 111.

[33]     *See* Complaint at 4.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[34] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[35] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[36]

The movant has the burden of demonstrating that no genuine issue of material fact exists.[37] In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact that does "'not rely

---

[34]    Fed. R. Civ. P. 56(c).

[35]    *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[36]    *Bouboulis v. Transport Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

[37]    *See, e.g.*, *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

7

on conclusory allegations or unsubstantiated speculation.'"[38]  To do so, it must do

more than show that there is a "'metaphysical doubt as to the material facts.'"[39]  In

determining whether a genuine issue of material fact exists, courts must construe

the evidence in the light most favorable to the non-moving party and draw all

justifiable inferences in that party's favor.[40]

## B.    Malicious Prosecution

To establish a claim for malicious prosecution under section 1983, a

plaintiff must allege all the elements of malicious prosecution under state law.[41]

Under New York law, to prevail on a claim of malicious prosecution, a plaintiff

must show: "(1) that the defendant initiated a prosecution against the plaintiff, (2)

that the defendant lacked probable cause to believe the proceeding could succeed,

(3) that the defendant acted with malice, and (4) that the prosecution was

---

[38]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)
(quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[39]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[40]    *See id.*

[41]    *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir.2002).  *See also
Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989) ("A claim of malicious
prosecution brought pursuant to section[ ] 1983 . . . is governed by state law in the
absence of federal common law.").

8

terminated in the plaintiff's favor."[42]  The existence of probable cause to arrest is a

complete defense to a malicious prosecution claim.[43]  "In general, probable cause

to arrest exists when the officers have knowledge or reasonably trustworthy

information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed or is

committing a crime."[44]  While a grand jury indictment creates a presumption of

probable cause, "[t]hat presumption may be overcome . . . 'by evidence that the

indictment was the product of fraud, perjury, the suppression of evidence by the

police, or other police conduct undertaken in bad faith.'"[45]

## IV.   DISCUSSION

Plaintiff bases his malicious prosecution claim on his theory that

detectives planted evidence in his apartment, which purportedly proves that

---

[42]     *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir.
1999) (citing *Ricciuti v. N.Y.C Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).

[43]     *See Gaskins v. City of New York*, No. 03 Civ. 605, 2004 WL
1777585, at *2 (S.D.N.Y. Aug. 6, 2004) (citing *Hyde v. Arresting Officer Caputo*,
No. 98 Civ. 6722, 2001 WL 521699, at *2-4 (E.D.N.Y. May 11, 2001)).

[44]     *Id.* (quotation marks and citation omitted).  *Accord Atwater v. City of
Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe
than an individual has committed even a very minor criminal offense . . . he may,
without violating the Fourth Amendment, arrest the offender.").

[45]     *Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir. 2000) (quoting
*Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996)).

9

defendants lacked probable cause to prosecute him.  The problem with this theory

is that plaintiff has no evidence to support it – only wishful thinking.  Although

plaintiff alleges that the detectives fabricated and planted evidence, he fails to

offer even a scintilla of support for these allegations.  Plaintiff does not dispute the

testimony of the medical examiner that there were no post-mortem manipulations

of the body of Angela Worthy, whose DNA was found in plaintiff's apartment.[46]

Nor does plaintiff dispute the testimony of several investigating officials that no

one saw anyone disturb Worthy's body and that no detectives or police officers

traveled with Worthy's body when it was transported from the scene.[47]  Plaintiff's

unsupported, conclusory allegation that someone must have planted the evidence

because there is no other way it could have gotten into his apartment is not

sufficient to defeat a motion for summary judgment.  While plaintiff relies on his

acquittal to show that a reasonable person could believe the evidence found in his

apartment was planted, his acquittal is evidence of reasonable doubt, not lack of

probable cause.

Here, plaintiff has offered no evidence that his Indictment was the

product of police misconduct or was otherwise improper.  Thus, the presumption

---

[46]    *See* Def. 56.1 ¶ 69.

[47]    *See id.* ¶¶ 42, 48, 50.

10

of probable cause created by that Indictment has not been rebutted by plaintiff.
Accordingly, the existence of probable cause proves fatal to plaintiff's malicious
prosecution claim, which must be dismissed.[48]

## V.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment
is granted and this case is dismissed with prejudice.  The Clerk of the Court is
directed to close this motion (Document # 32 on the docket sheet) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 2, 2007

---

[48]     Because plaintiff has failed to allege facts sufficient to show that
defendants lacked probable cause, this Court need not address the remaining
malicious prosecution factors or the issues of qualified and state-law, good-faith
immunity.

## -Appearances-

**For Plaintiff:**

Darmin Bachu, Esq.
Bachu & Associates
127-21 Liberty Avenue
South Richmond Hill, N.Y. 11419
(718) 843-6464

**For Defendants:**

Jordan M. Smith
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, N.Y. 10007
(212) 788-0869